1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**
9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   SEAN PLYMALE,                          CASE NO. CV F 09-0802 LJO DLB
12                    Plaintiff,            **ORDER ON DEFENDANTS F.R.Civ.P. 12**
                                            **MOTIONS**
13        vs.                               (Doc. 6.)
14   CITY OF FRESNO, et al,
15                    Defendants.
16   _____/
17                          **INTRODUCTION**

18       Defendants City of Fresno ("City") and three of its police officers[1] seek to dismiss plaintiff City

19   police officer Sean Plymale's ("Officer Plymale's") employment discrimination, retaliation and

20   conspiracy claims as lacking necessary elements and as barred by limitations and privilege defenses.

21   Officer Plymale responds that is complaint is "well taken" and avoids defenses raised by defendants.

22   This Court considered defendants' F.R.Civ.P. 12 motions on the record and VACATES the July 1, 2009

23   hearing, pursuant to Local Rule 78-230(h).  For the reasons discussed below, this Court DISMISSES

24   in part Officer Plymale's claims.

25   _____

26       [1]       The defendant police officers are employed by the City's Police Department ("Department") and are
     Department Chief of Police Jerry Dyer ("Chief Dyer"), Department Lieutenant Art Alvarado ("Lt. Alvarado"), and
27   Department Sergeant Mark Salazar ("Sgt. Salazar").  Lt. Alvarado is the commander of the Department's Internal Affairs
     Unit ("IA").  Sgt. Salazar is assigned to IA.  The City, Chief Dyer, Lt. Alvarado and Sgt. Salazar will be referred to
28   collectively as "defendants").

                                            1

1                         **BACKGROUND**[2]

2                         **Canine Incident**

3       During the early morning hours of October 10, 2005, Officer Plymale, a white, 10-year police

4 veteran, responded with a canine to a woman's call that her former boyfriend had forcibly entered her

5 apartment and assaulted her. Officer Plymale located the suspect and used the canine to subdue the

6 fleeing suspect who resisted arrest and fought with the canine. The suspect received medical care and

7 was booked into jail.

8       On returning to his following day's shift, Officer Plymale dictated his report on the incident and

9 later revised it. Other officers prepared reports regarding the incident.

10       On October 13, 2005, the City paid the suspect $10,000 and obtained his release of claims against

11 the City.

12                  **IA Investigation And Disciplinary Action**

13       IA initiated an investigation into the canine incident. IA interviewed Officer Plymale on October

14 18, 2005 and November 3, 2005. Officer Plymale was placed on administrative leave.

15       On February 21, 2006, Officer Plymale was served with a notice of intention to terminate and

16 an IA report. At a March 27, 2006 *Skelly* hearing before Chief Dyer, Officer Plymale and his counsel

17 presented evidence that the IA report had "significant and numerous misrepresentations." Chief Dyer

18 was presented with "information relating to the conflict of interest and motivations of the investigating

19 IA officer."

20       After an apparent "redone" IA investigation, Officer Plymale was served on July 25, 2006 with

21 an amended notice of intention to terminate. On August 29, 2006, another *Skelly* hearing was conducted

22 before Chief Dyer. Chief Dyer signed a September 6, 2006 termination order which was served on

23 Officer Plymale on September 13, 2006. Officer Plymale appealed the termination order on September

24 15, 2006.

25       On June 4, 2007, a hearing officer commenced a hearing on Officer Plymale's appeal. After the

26 hearing on June 13, 2007, the hearing officer found that Officer Plymale should not have been

27 

---

28         [2]    The factual recitation is derived generally from Officer Plymale's Complaint for Damages ("complaint"), the target of defendants' challenges.

terminated.  On October 18, 2007, the Civil Service Board adopted the hearing officer's recommendation and ordered Officer Plymale reinstated with full back pay and benefits.

### Administrative Complaint

On October 22, 2008, Officer Plymale filed his complaint with the California Department of Fair Employment and Housing ("DFEH") to claim that the City discriminated and retaliated against him based on his race and association with Department Sergeant Michael Manfredi ("Sgt. Manfredi"), who is white.  Officer Plymale claims defendants retaliated against Officer Plymale because he "would not testify falsely to help Defendants in their effort to terminate Sgt. Manfredi."  DFEH issued Officer Plymale a right-to-sue letter on October 22, 2008.

### Officer Plymale's Claims

Officer Plymale filed this action on April 1, 2009 to allege that the IA investigation and disciplinary actions "were racially motivated and/or biased" against Officer Plymale and that if Officer Plymale were Hispanic, he "would not have been subjected to such investigation or discipline." According to the complaint, "Hispanic officers received preferential treatment, particularly in terms of internal investigation and resulting disciplinary actions."  The complaint alleges on information and belief that Lt. Alvarado and Sgt. Salazar "had a particular racial bias against Sergeant Manfredi and Plaintiff's association with Sgt. Manfredi exacerbated the pre-existing racially hostile environment in the Internal Affairs Division and its conduct of the October 10 incident." The complaint further alleges on information and belief that since Officer Plymale did not testify falsely to facts helpful to eliminate Sgt. Manfredi from the Department, Officer Plymale was subject to retaliation and attempted termination.

The complaint alleges:

1. A (first) 42 U.S.C. § 1981 ("section 1981") cause of action that defendants violated the Fourteenth Amendment by subjecting Officer Plymale to a "racially hostile work environment" and employment discrimination;

2. A (second) 42 U.S.C. § 1985 ("section 1985") conspiracy cause of action that Chief Dyer, Lt. Alvarado and Sgt. Salazar conspired and denied Officer Plymale the "exercise of his civil rights to be free from discrimination" and that disciplinary action against

1   Officer Plymale "was retaliatory and racially motivated and was done in furtherance of

2   the conspiracy"; and

3   3.   A (third) California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§

4   12900, et seq., cause of action that the City's disciplinary action of Officer Plymale was

5   "retaliatory and racially motivated."

6   The complaint seeks to recover damages for economic injury, lost wages and emotional distress,

7   punitive damages, and attorney fees.

8   **DISCUSSION**

9   **F.R.Civ.P. 12(b)(6) Standards**

10   Defendants initially raise several F.R.Civ.P. 12(b)(6) challenges to Officer Plymale's claims.

11   A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the

12   complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any

13   evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

14   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

15   claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

16   Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

17   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

18   theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

19   Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

20   In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light

21   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

22   whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty

23   Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal

24   conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

25   the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

26   Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines

27   that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.

28   v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a

4

1  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

2  provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

3  formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

4  U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss

5  any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently

6  all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629,

7  634 (S.D. Cal. 1998).

8       Defendants further challenge Officer Plymale's claims as time barred and subject to a privilege

9  defense.  A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.  *Jablon v.

10  Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676

11  F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6)

12  motion to dismiss may raise the limitations defense when the statute's running is apparent on the

13  complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear on the complaint's

14  face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a

15  motion to dismiss accompanied by affidavits.  *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg.

16  Corp.*, 576 F.2d 697 (6th Cir. 1978).  If the limitations defense is not apparent on the complaint's face

17  and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary

18  judgment motion may be employed.  *Jablon*, 614 F.2d at 682.

19       Moreover, a complaint's face may reveal other defenses as a matter of law.  "If the pleadings

20  establish facts compelling a decision one way, that is as good as if depositions and other expensively

21  obtained evidence on summary judgment establishes the identical facts."  *Weisbuch v. County of Los

22  Angeles*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997).

23       With these standards in mind, this Court turns to defendants' challenges to Officer Plymale's

24  claims.

25                            **<u>Section 1981 Discrimination</u>**

26                            ***Adverse Employment Action***

27       Defendants contend that the (first) section 1981 discrimination claim lacks the requisite element

28  of adverse employment action.  Defendants argue that "an internal affairs investigation and vacated

1   employment decision do not constitute material employment actions."

2        Section 1981 provides in pertinent part:

3        (a) Statement of equal rights

4        All persons within the jurisdiction of the United States shall have the same right
5   in every State and Territory to make and enforce contracts, to sue, be parties, give
    evidence, and to the full and equal benefit of all laws and proceedings for the security of
6   persons and property as is enjoyed by white citizens, and shall be subject to like
    punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
    other.

7   . . .

8        (c) Protection against impairment

9        The rights protected by this section are protected against impairment by
10  nongovernmental discrimination and impairment under color of State law.

11       Section 1981 "by its broad terms, . . . proscribe[s] discrimination in the making or enforcement

12  of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273,

13  295, 96 S.Ct. 2574 (1976).

14       Defendants note that a section 1981 claim's elements are "akin" to a Title VII race discrimination

15  claim to render section 1981 and Title VII claims "parallel" and subject to "the same analysis." *See*

16  *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Jones v. Robinson Property Group*, 427

17  F.3d 987, 992 (5th Cir. 2005) ("analysis under both statutes are identical").

18       Defendants place on a section 1981 and/or Title VII plaintiff the burden to prove that the

19  "plaintiff's race was a motivating factor for the defendant's adverse employment action." An employer

20  does not avoid liability for intentional racial discrimination where the discrimination is a substantial and

21  motivating factor in causing injury, even if the discrimination is not a "but for" cause of the employee's

22  discharge. *Edwards v. Jewish Hosp. of St. Louis,*855 F.2d 1345, 1348 (8th Cir. 1988).

23       Adverse employment action requires "a materially adverse change" in employment terms.

24  *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A "tangible employment

25  action in most cases inflicts direct economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742,

26  762, 118 S.Ct. 2257 (1998). "A tangible employment action constitutes a significant change in

27  employment status, such as hiring, firing, failing to promote, reassignment with significantly different

28  responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 765, 118

6

1   S.Ct. 2257; *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1179 (9th Cir. 2001).

2          A plaintiff's displeasure "by an employer's act or omission does not elevate that act or omission

3   to the level of a materially adverse employment action." *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st

4   Cir. 1996).  To qualify as adverse, the action must be "more disruptive than a mere inconvenience or

5   alteration of job responsibilities.  A materially adverse change might be indicated by a termination of

6   employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material

7   loss of benefits, significantly diminished material responsibilities, or other indices that might be unique

8   to a particular situation." *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

9                                              IA Investigation

10          Defendants argue that the IA investigation was not wrongful adverse action under section 1981.

11   *See Harrison v. City of Akron*, 43 Fed.Appx. 903, 905 (6th Cir. 2002) ("internal investigations are not

12   adverse actions");  *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) ("investigating alleged

13   violations of departmental policies and making purportedly false accusations are not adverse

14   employment actions"); *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir. 1998) ("Although

15   a reprimand can constitute an adverse employment action, an investigation does not."); *Ware v.

16   Billington*, 344 F.Supp.2d 63, 76 (D. D.C. 2004) ("although the discipline imposed as a result of an

17   investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere

18   initiation of the investigation does not"); *McRae v. Department of Corrections and Rehabilitation,* 142

19   Cal.App.4th 377, 392, 48 Cal.Rptr.3d 313 (2006) ("While the memoranda and letter of instruction

20   properly may be considered in deciding whether the Department engaged in a course of conduct that

21   altered the terms or conditions of employment, there is no merit to [plaintiff's] contention that they are

22   themselves adverse actions because they might later be cited as part of the reason for an employment

23   decision.")

24          Officer Plymale relies on his claim that he was subjected to an investigation based on his race

25   and in retaliation against his association with Sgt. Manfredi.  An "adverse employment action" arises

26   "when an employer knows its employees are entitled to certain opportunities, but forces only employees

27   of a certain race to use the grievance procedure to obtain them. The fact of successfully grieving an

28   adverse employment action does not preclude an employee from pursuing a claim of discrimination."

1   *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 848 (9th Cir. 2004).

2          Defendants appear to oversimplify the adverse action analysis. The complaint sufficiently pleads

3   that Officer Plymale was subjected to an investigation based on his race and in retaliation against him.

4   Officer Plymale was entitled to perform his job free of discrimination and retaliation but allegedly was

5   discriminated and retaliated against to compel him to pursue a grievance to preserve his job.  The

6   investigation adversely changed Officer Plymale's employment terms in that it concluded in his

7   termination, notwithstanding his reinstatement.  The investigation and its effects were a disruption of

8   his employment.  Defendants have failed to demonstrate with binding authority that the investigation

9   was not adverse employment action, especially given the allegations that discrimination and retaliation

10  motivated the investigation.

11                                         Reinstatement

12         Defendants further contend that the notice for Officer Plymale's termination was not adverse

13  action in that through the appeal process, Officer Plymale was reinstated with full benefits and back pay.

14  *See Brooks v. City of San Mateo*, 229 F.3d 917, 929-930 (9th Cir. 2000) (plaintiff's evaluation "was not

15  an adverse employment action because it was subject to modification by the city" on appeal); *Mayers*

16  *v. Campbell*, 87 Fed.Appx. 467, 471 (6th Cir. 2003) (prison employee suffered no adverse employment

17  action when suspension was rescinded after employee filed grievance); *Dobbs-Weinstein v. Vanderbilt*

18  *Univ.*, 185 F.3d 542, 546 (6th Cir.1999) ("Dobbs-Weinstein succeeded in the grievance process, and

19  Vanderbilt's final decision was to grant her tenure. She has not here suffered a final or lasting adverse

20  employment action sufficient to create a prima facie case of employment discrimination under Title VII.

21  To rule otherwise would be to encourage litigation before the employer has an opportunity to correct

22  through internal grievance procedures any wrong it may have committed."); *Benningfield v. City of*

23  *Houston*, 157 F.3d 369, 377 (6th Cir. 1998) (reprimand rescinded though internal procedures "does not

24  constitute an adverse employment action"); *Lumhoo v. Home Depot USA, Inc.*, 229 F.Supp.2d 121, 139

25  (E.D.N.Y. 2002) (claim of adverse employment action arising from discharge "fails as a matter of law

26  because at the conclusion of defendants' investigation into [plaintiff] Anderson's allegations concerning

27  the September 19, 1999 incident, defendants offered and Anderson accepted, an unconditional offer of

28  reinstatement with full back pay, the same salary and benefits, and the same seniority status");

*Crittenden v. Int'l Paper Co. Wood Products Div.*, 214 F.Supp.2d 1250, 1254 (M.D. Ala. 2002) ("The ultimate result of the grievance process, if full relief is awarded, may remove the employment decision from the protection of the civil rights statutes. Therefore, in this case, while the failure to immediately reinstate [plaintiff] Crittenden to the position he held prior to his termination, standing alone, may have been an adverse employment action, the relief Crittenden received as a result of the grievance process, including full reinstatement and back pay, removes the initial decision not to reinstate him to his former position from the scope of the protection of § 1981.")

Officer Plymale acknowledges his reinstatement and notes that he "nevertheless suffered for a period of two years the reality of termination. The IA did not occur in a vacuum nor was his termination independent of the racial discriminatory environment." Defendants cite no Ninth Circuit Court of Appeals authority that Officer Plymale's reinstatement defeats his section 1981 claim. Officer Plymale points to the Ninth Circuit's determination in *Fonseca*, 374 F.3d at 848, that the "fact of successfully grieving an adverse employment action does not preclude an employee from pursuing a claim of discrimination." The complaint sufficiently alleges that defendants forced Officer Plymale, as a white, to use the grievance procedure to protect his job. Officer Plymale's success does not distract from alleged adverse employment action which would have been avoided in the absence of alleged discrimination or retaliation. The section 1981 claim satisfies the adverse action element at this pleading stage.

### *Monell Liability*

Defendants fault the lack of a section 1981 claim against the City in the absence of allegations of discrimination arising from a City custom or policy.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

As to section 1981(c), Congress intended to "import . . . the traditional 'policy or custom' requirement set forth in *Monell*." *African American Contractors*, 96 F.3d at 1215.  In *African American Contractors*, 96 F.3d at 1215, the Ninth Circuit concluded:

> In our view, the language of § 1981(c), considered in the context of the long history of federal case law precluding respondeat superior liability for state actors, is conclusive evidence that the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom' requirement in suits against state actors.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1.   An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2.   A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3.   Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

Defendants characterize as "fatally deficient" the section 1981 claim's mere allegation that:

> Defendants used and/or allowed official policies, procedures and/or practices to discriminate against Plaintiff on the basis of his race, in violation of the Fourteenth Amendment to the United States Constitution as made actionable pursuant to 42 USC § 1981.

Officer Plymale responds that Chief Dyer was the Department policy maker "who signed off on the discipline" after he "was told of the falsity of the reports and allegations." Officer Plymale notes that Chief Dyer "ratified acts of disparate treatment and allowed them to continue."

Officer Plymale appears to rely on the complaint's preliminary allegation that Chief Dyer "is vested with the power and authority to make and approve policies relating to the Fresno Police Department and its operations, as well as decisions relating to personnel, including but not limited to, initiation of internal investigations and imposition of disciplinary actions." Defendants are correct that a section 1981 claim against the City is at best conclusory. "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). The complaint lacks specific facts to identify or describe a policy or custom to invoke a section 1981 claim. Officer Plymale's reliance on Chief Dyer's "signing off" on his termination is insufficient, although Chief Dyer may be a Department policy maker, given that Chief Dyer did not make the ultimate decision on Officer Plymale's employment status. In addition, the complaint fails to allege how a policy or custom was a moving force behind a section 1981 violation. As such, the complaint lacks sufficient

1   allegations to establish the City's liability under section 1981.  Officer Plymale is granted leave to

2   attempt to plead a viable section 1981 claim against the City.

3                                   **Section 1985 Conspiracy**

4                            ***Elements – Particularized Allegations***

5       Defendants surmise that the complaint attempts to allege a section 1985(3)[3] conspiracy claim

6   against Chief Dyer, Lt. Alvarado and Sgt. Salazar.  Defendants fault the (second) section 1985 claim's

7   absence of "specific facts from which to infer a conspiracy."

8       Section 1985 proscribes conspiracies to interfere with certain civil rights.  A section 1985 claim

9   "must allege facts to support the allegation that defendants conspired together. A mere allegation of

10  conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839

11  F.2d 621, 626 (9th Cir. 1988).  A conspiracy occurs only when the parties have reached "a unity of

12  purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."

13  *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138 (1946).

14      "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to

15  deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and

16  immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and

17  (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United

18  States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  "To bring a cause of action successfully

19

20          [3]      Section 1985(3) provides:

21      If two or more persons in any State or Territory conspire or go in disguise on the highway or on the
22  premises of another, for the purpose of depriving, either directly or indirectly, any person or class of
    persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the
23  purpose of preventing or hindering the constituted authorities of any State or Territory from giving or
    securing to all persons within such State or Territory the equal protection of the laws; or if two or more
24  persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote,
    from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully
25  qualified person as an elector for President or Vice President, or as a Member of Congress of the United
    States; or to injure any citizen in person or property on account of such support or advocacy; in any case
26  of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any
    act in furtherance of the object of such conspiracy, whereby another is injured in his person or property,
27  or deprived of having and exercising any right or privilege of a citizen of the United States, the party so
    injured or deprived may have an action for the recovery of damages occasioned by such injury or
28  deprivation, against any one or more of the conspirators.

                                          12

under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section 1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

Defendants note the complaint's "generalized allegations of conspiracy" that Chief Dyer, Lt. Alvarado and Sgt. Salazar conspired to terminate Officer Plymale who refused to testify falsely against Sgt. Manfredi. Defendants point to an absence of allegations of "specific facts or communications linking the Defendants to any conspiracy; to any overt act; or that the purpose of the conspiracy was to deprive Plaintiff of his rights based on race."

To support his section 1985 claim, Officer Plymale points to allegations that "Hispanic officers received preferential treatment, particularly in terms of IA investigations and disciplinary actions" and that Lt. Alvarado and Sgt. Salazar "had a particular racial bias against Sgt. Manfredi and that Plaintiff's association with Sgt. Manfredi exacerbated the pre-existing racially hostile environment in IA and the conduct of the investigation."

A section 1985(3) claim "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *See Powell v. Workmen's Compensation Bd. of State of N. Y.*, 327 F.2d 131, 137 (2nd Cir. 1964). A section 1985(3) plaintiff is "bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell*, 327 F.2d at 137. A section 1985(3) plaintiff "may not merely make conclusory allegations of conspiracy." *See Grigsby v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa. 2003). "[O]nly allegations which are particularized, such as those

1    addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance

2    of the conspiracy, will be deemed sufficient." *Grigsby*, 250 F.Supp.2d at 458.

3        The gist of the complaint's section 1985(3) conspiracy claim is that Chief Dyer, Lt. Alvarado and

4    Sgt. Salazar "conspired to eliminate Sgt. Manfredi from the Department, and because Plaintiff would

5    not falsely testify to facts helpful to such intention, Plaintiff as also a target of their conspiracy." The

6    complaint offers passing references that Sgt. Manfredi and Officer Plymale are white and lacks

7    allegations of deprivations of rights motivated by racial or classed based discriminatory animus. The

8    complaint further lacks meaningful allegations of overt acts to promote a conspiracy to deprive Officer

9    Plymale of equal protection. The complaint lacks sufficient particularized allegations to support a

10    section 1985(3) conspiracy claim. Officer Plymale is granted leave to attempt to plead a viable section

11    1985(3) claim.

12                     ***Limitations Defense***

13        Defendants argue that Officer Plymale's section 1985(3) conspiracy claim is barred by

14    California's two-year personal injury limitations applicable to claims under federal civil rights statutes.

15        Federal civil rights statutes have no independent limitations period. *Johnson v. State of*

16    *California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711

17    (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought

18    pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; McDougal v. County of Imperial*, 942 F.2d 668, 673-

19    674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are

20    governed by the same statute of limitations as actions under § 1983")[4]; *Abreu v. Ramirez*, 284 F.Supp.2d

21    1250, 1257 (C.D. Cal. 2003). The applicable limitations period is determined by borrowing the forum

22    state's limitations period for personal injuries. *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.

23    Section 1983 and related federal civil rights claims "are best characterized as personal injury actions."

24    *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

25    / / /

26    / / /

27

28      [4]      Officer Plymale's assertion that 28 U.S.C. § 1658 applies to his section 1985(3) claim is unavailing.

1   On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[5] took

2   effect to extend the prior limitations period for personal injury actions (and correspondingly to federal

3   civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express*

4   *Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir.

5   1990)), from one year under former California Code of Civil Procedure section 340(3) to two years.

6   *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying

7   California law, federal civil rights claims which arise in California are generally barred if not brought

8   within two years if they accrued after January 1, 2003. *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot*

9   *v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993

10   F.2d at 711.

11   "The proper focus is upon the time of the discriminatory acts, not upon the time at which the

12   consequences of the acts became most painful." *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th

13   Cir. 1979) (addressing sex discrimination claim).

14   Defendants argue that the limitations period started on September 13, 2006, when Officer

15   Plymale was served with a termination notice following the second *Skelly* hearing. Defendants

16   characterize the September 13, 2006 action as "notice of the allegedly wrongful operative decision."

17   Defendants contend that since Officer Plymale delayed to April 1, 2009 to file his action, he is unable

18   to timely allege "a conspiratorial act that injured him."

19   Officer Plymale responds that he is entitled to equitable tolling of the two-year limitations period

20   in that defendants were "actively involved" in Officer Plymale's underlying grievance proceedings and

21   that he timely appealed his termination to the Civil Service Board.

22   The Ninth Circuit has explained application of equitable tolling:

23   A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period
    if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing

24   the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second
    claim; and 3) good faith and reasonable conduct in filing the second claim. . . The

25   doctrine of equitable tolling focuses on the effect of the prior claim in warning the
    defendants in the subsequent claim of the need to prepare a defense.

26

27   _____

28   [5]    Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of,
    an individual caused by the wrongful act or neglect of another."

15

1    *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citation omitted).

2         "The burden is on the plaintiff to show that equitable tolling is appropriate." *United States v.*

3    *Marolf*, 173 F.3d 1213, 1218, n. 3 (9th Cir. 1999).

4         Of key importance here is the similarity of Officer Plymale's Civil Service Board appeal and his

5    section 1985(3) claim.  In *Cervantes*, 5 F.3d at 1276, the Ninth Circuit addressed the "similarity" issue:

6              Nonetheless, "similarity" of the prior and subsequent claims is a significant
         consideration when applying the second test factor, prejudice to the defendant. However,
7         unlike a "threshold" inquiry determinable as a matter of law, the focus of this factor is
         whether the facts of the two claims are "at least so similar that the defendant's
8         investigation of the first claim will put him in a position to fairly defend the second."
         *Collier*, 142 Cal.App.3d at 925, 191 Cal.Rptr. at 685-86. "The critical question is
9         whether notice of the first claim affords the defendant an opportunity to identify the
         sources of evidence which might be needed to defend against the second claim." *Id.* This
10        inquiry  – the appropriate "similarity" inquiry under California law – is far more
         fact-specific and evidence-bound than the "threshold" determination apparently
11        envisioned by the district court. Under California's equitable tolling test, "similarity" is
         less a legal conclusion and more a factual exploration of the contentions and evidence
12        relevant to each claim. As such, "similarity" is not easily resolved as a matter of law,
         without receiving evidence.

13             . . . At a minimum, determining the applicability of equitable tolling necessitates
14        resort to the *specific* circumstances of the prior claim: parties involved, issues raised,
         evidence considered, and discovery conducted.  (Italics in original).

15

16        Neither the parties nor complaint adequately address the equitable tolling elements, in particular,

17   defendants' lack of prejudice to gather evidence to defend the section 1985(3) claim.  As the Ninth

18   Circuit notes, equitable tolling requires a practical, factual inquiry which this Court is unable to

19   adequately make based on the complaint's face.  The complaint lacks allegations that Officer Plymale's

20   Civil Service Board appeal and section 1985(3) claim share such similar facts that defendants'

21   investigation of the Civil Service Board appeal put them in a position to fairly defend the section 1985(3)

22   claim.  Although the claims appear dissimilar (employment grievance vs. conspiracy), this Court grants

23   Officer Plymale leave to attempt to plead facts to support equitable tolling.

24        In addition, Officer Plymale's assertion of administrative remedies tolling is unavailing in the

25   absence of authority that he needed to exhaust administrative remedies to support a section 1985(3)

26   claim.

27                                    **Official Capacity**

28        Chief Dyer, Lt. Alvarado and Sgt. Salazar seek dismissal of the 1981 and 1985 claims in their

                                            16

1   official capacities given that the City is a defendant.

2        Official-capacity suits "generally represent only another way of pleading an action against an

3   entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018.  "As long as the

4   government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

5   respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159,

6   166, 105 S.Ct. 3099 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-472, 105 S.Ct. 873 (1985)).

7   Such an action is not against the public employee personally, "for the real party in interest is the entity."

8   *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.

9        Officer Plymale responds that Lt. Alvardo and Sgt. Salazar are not sued in their official capacities

10   and the complaint's reference to their titles "explains their access, ability and power to engage in the

11   conduct of which Plaintiff complains."

12        "[I]ndividuals may be held liable for violations of § 1981." *Jones v. Continental Corp.*, 789

13   F.2d 1225, 1231 (6th Cir. 1986).  "Section 1981 applies to all types of racial discrimination, public or

14   private." *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir.1981).  "[P]rivate citizens are proper

15   defendants" in suits under § 1981. *Vietnamese Fishermen's Association v. Knights of Ku Klux Klan*, 518

16   F.Supp. 993, 1008 (S.D.Tex. 1981); *see Faraca v. Clements*, 506 F.2d 956, 957 (5th Cir.1975)

17   (individual director held liable while corporation exonerated).

18        The section 1981 and 1985 claims are against Lt. Alvardo and Sgt. Salazar in their individual

19   capacities and do not warrant dismissal against them in their official capacities.

20        As to Chief Dyer, Officer Plymale notes that the complaint alleges that as a City official, Chief

21   Dyer "participated in and ratified the discriminatory acts."

22        Local government officials sued in their official capacities are "persons" under section 1983 in

23   cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98

24   S.Ct. 2018.  "For this reason, when both an officer and the local government entity are named in a

25   lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may

26   be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa*

27   *Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)).  "Section 1983 claims against government officials in

28   their official capacities are really suits against the governmental employer because the employer must

1    pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9ᵗʰ Cir. 2002).

2        "[I]t is no longer necessary or proper to name as a defendant a particular local government

3    officer acting in official capacity." *Luke*, 954 F.Supp. at 204.  As the district court in *Luke*, 954 F.Supp.

4    at 204, explained:

5        A plaintiff cannot elect which of the defendant formats to use. If both are named, it is
         proper upon request for the Court to dismiss the official-capacity officer, leaving the
6        local government entity as the correct defendant. If only the official-capacity officer is
         named, it would be proper for the Court upon request to dismiss the officer and substitute
7        instead the local government entity as the correct defendant.

8        Officer Plymale points to no meaningful grounds to maintain the section 1981 and 1985 claims

9    against Chief Dyer in his official capacity given that the City remains a defendant.  The complaint's

10   section 1981 and 1985 claims are dismissed against Chief Dyer in his official capacity.

11                              **FEHA Discrimination And Retaliation**

12                                  ***Adverse Employment Action***

13       Defendants contend that Officer Plymale's FEHA discrimination and retaliation claim fails in

14   the absence of adverse employment action, a necessary element of the claim.  Officer Plymale responds

15   that the claim's "gravamen" is that "the disciplinary process was itself an implement of disparate

16   treatment – that non-Hispanic officers were subject to investigation and discipline which Hispanic

17   officers were not – and such experience is itself an adverse condition of employment."

18       FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the

19   right and opportunity of all persons to seek, obtain, and hold employment without discrimination or

20   abridgment on account of race . . . [or] color. . ." Cal. Gov. Code, § 12920.  California Government Code

21   section 12940(a) deems unlawful: "For an employer, because of race . . . [or] color . . . to refuse to hire

22   or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate

23   against the person in compensation or in terms, conditions, or privileges of employment."  California

24   Government Code section 12940(h) renders unlawful for an employer to "discharge, expel, or otherwise

25   / / /

26   / / /

27   / / /

28   / / /

                                            18

1  discriminate against any person because the person has opposed any practices forbidden under this part

2  . . ."

3      To establish a prima facie case of disparate treatment under *McDonnell Douglas*[6], a plaintiff must

4  show he/she:

5      1.   Was a member of a protected class;

6      2.   Was performing his/her job satisfactorily;

7      3.   Suffered an adverse employment action; and

8      4.   The action occurred under circumstances suggesting a discriminatory motive, that is,

9          persons outside the protected class with equal or lesser qualifications were given more

10          favorable treatment.

11  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); *Goodwin v. Hunt*

12  *Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct.

13  1817); *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991); *see*

14  *also Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 356, 100 Cal.Rptr.2d 352, 379 (2000).

15      To establish a prima facie retaliation case, a plaintiff must show:

16      1.   He/she engaged in a protected activity;

17      2.   He/she was thereafter subjected to adverse employment action by his/her employer; and

18      3.   There was a causal link between the two.

19  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082, 115

20  S.Ct. 733 (1995); *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006, 109

21  S.Ct. 786 (1989); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984); *Fisher*

22  *v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 615, 262 Cal.Rptr. 842 (1989).

23      Defendants focus on the adverse employment action prong of the discrimination and retaliation

24  claims and contend that the "Internal Affairs investigation and vacated employment decision are not

25  material adverse employment actions."

26      Inquiry whether employment action is adverse requires a case-by-case determination based upon

27

28      [6]   California courts follow the *McDonnell Douglas* framework.  *Mixon v. Fair Employment and Housing*
*Commission*, 192 Cal.App.3d 1306, 1317-1318, 237 Cal.Rptr. 884, 980-891 (1987).

19

1   objective evidence. *Blackie*, 75 F.3d at 725. As discussed above, an adverse employment action requires

2   "a materially adverse change" in employment terms.  *Kocsis*, 97 F.3d at 885.  A "tangible employment

3   action in most cases inflicts direct economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. at

4   762, 118 S.Ct. 2257.  "A tangible employment action constitutes a significant change in employment

5   status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities,

6   or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Kohler*,

7   244 F.3d at 1179.

8       As discussed above, the complaint satisfies the adverse action element for a section 1981 claim.

9   As such, the adverse action element is sufficiently plead for a FEHA discrimination/retaliation claim in

10   that the alleged wrong is institution of the disciplinary process against Officer Plymale.

11                                    ***Limitations Period***

12      Defendants challenge Officer Plymale's FEHA claim as barred by the one-year limitations period

13   of California Government Code section 12960, which requires a claimant to file a DFEH verified

14   complaint prior to "the expiration of one year from the date upon which the alleged unlawful practice or

15   refusal to cooperate occurred."

16      "The law is quite clear that if an employee fails to file an administrative charge specifically

17   identifying the alleged discrimination, and within one year of its occurrence, the subsequent lawsuit will

18   be barred." *Hobson v. Raychem Corp.*, 73 Cal.App.4th 614, 631, 86 Cal.Rptr.2d 497 (1999), *superceded*

19   *on other grounds by statute*, *Bryan v. United Parcel Service, Inc.*, 307 F.Supp.2d 1108 (N.D. Cal. 2004).

20      The complaint alleges that Officer Plymale filed his DFEH complaint on October 22, 2008, the

21   same day he received his right-to-sue letter.  Defendants contend that wrongful actions prior to October

22   22, 2007 are time barred and include all actions up to Officer Plymale's September 13, 2006 service of

23   his termination order.

24      Officer Plymale responds that the continuing violation doctrine applies to preserve alleged

25   discrimination and retaliation arising prior to October 22, 2007.

26      In *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982), the Ninth Circuit explained

27   application of the continuing violation doctrine to different employment claims:

28       . . . For present purposes, however, the relevant strain of continuing violation doctrine is

20

that a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period. . . . The reason is that the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period. Such continuing violations are most likely to occur in the matter of placements or promotions. A minority employee who is not promoted in 1973, for example, and is subject to a continuing policy against promotion of minorities, may then file a timely charge in 1976, because the policy against promoting him or her continued to violate the employee's rights up to the time the charge was filed. With regard to such discrimination in promotion, this court has accepted the following formulation:

(A) challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future.

. . .

The situation may be different, however, with regard to complainants who have ceased to be employees or never were employees. A refusal to hire or a decision to fire an employee may place the victim out of reach of any further effect of company policy, so that such a complainant must file a charge within the requisite time period after the refusal to hire or termination, or be time-barred. If in those cases the victims can show no way in which the company policy had an impact on them within the limitations period, the continuing violation doctrine is of no assistance or applicability, because mere "continuing impact from past violations is not actionable. Continuing violations are." *Reed v. Lockheed Aircraft Corp.*, 613 F.2d at 760; *see United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).  (Citations omitted.)

Officer Plymale's second termination order was served on him on September 13, 2006, more than two years prior to filing of his DFEH complaint.  Officer Plymale appealed on September 15, 2006, and a hearing culminated in June 13, 2007 hearing officer recommendation favorable to Officer Plymale. The Civil Service Board adopted the hearing officer's recommendation on October 18, 2007.  All of these events transpired a year prior to the October 22, 2008 filing of the DFEH complaint.  The complaint indicates that Officer Plymale was terminated by defendants' alleged wrongs no later than September 13, 2006.  By that time, the impact of the alleged wrongs had culminated to render the continuing violation doctrine of no assistance.  This is not a case of repeated failure to promote to invoke the continuing violation doctrine.  Moreover, the complaint fails to allege a pattern or frequency of discrimination or retaliation after service of the September 13, 2006 termination notice.  The continuing violation doctrine does not revive Officer Plymale's stale FEHA claim.

### *California Civil Code Section 47(b) Privilege*

Defendants seek to invoke the privilege under California Civil Code section 47(b) ("section

47(b)") which renders as privileged a publication or broadcast "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . ." Defendants point out that Officer Plymale was subject to the disciplinary process under California Government Code, §§ 3300, et seq., and Fresno Municipal Code sections 3-283 and 3-286.

Officer Plymale responds that his complaint alleges a racially hostile environment and disparate treatment and that the IA investigation and discipline "constituted disparate treatment and were racially motivated in violation of California's anti-discrimination laws."

The section 47(b) privilege is "absolute" and "bars all tort causes of action except a claim for malicious prosecution." *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 808, 81 P.3d 244 (2004). "One policy underlying the absolute privilege for statements made in governmental investigations and reports of misconduct 'is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.'" *Braun v. Bureau of State Audits*, 67 Cal.App.4th 1382, 1390, 79 Cal.Rptr.2d 791 (1998) (quoting *Imig v. Ferrar*, 70 Cal.App.3d 48, 55, 138 Cal.Rptr. 540 (1977)). The purpose of the section 47(b) privilege "seems no less relevant to [statutory] claims." *Ribas v. Clark*, 38 Cal.3d 355, 364, 212 Cal.Rptr. 143 (1985).

The section 47(b) privilege "applies not only to judicial proceedings but to all truth-seeking inquiries, including legislative and other official proceedings." *Crowley v. Katleman*, 8 Cal.4th 666, 695, 34 Cal.Rptr.2d 386 (1994); *see Imig*, 70 Cal.App.3d at 54-55, 138 Cal.Rptr. 540 (police investigation is an "official proceeding authorized by law" for section 47(b) purposes). "In short, this unqualified privilege applies to various communications intended to instigate official investigation into wrongdoing." *Hansen v. California Dept. of Corrections and Rehabilitation*, 171 Cal.App.4th 1537, 1546-1547, 90 Cal.Rptr.3d 381 (2008) (section 47(b) absolutely privileged statements to corrections officials as part of an internal investigation of a corrections employee and concerned his alleged misconduct and criminal conduct).

The privilege is not limited to statements made during trial or other proceedings "but may extend to steps taken prior thereto or afterwards." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057, 128 P.3d 713 (2006). The term "official proceeding" extends to investigatory activities by public agencies, *Braun*, 67

Cal.App.4th at 1388-1389, 79 Cal.Rptr.2d 791. The "official proceeding" privilege has been interpreted broadly to protect communication to or from governmental officials which may precede the initiation of formal proceedings. *Hagberg*, 32 Cal.4th at 365, 7 Cal.Rptr.3d 803.

"[C]ommunications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal. This is assuming, of course, that the communications are 'logically related' to the litigation." *Kashian v. Harriman*, 98 Cal.App.4th 892, 920, 120 Cal.Rptr.2d 576 (2002). Doubts as to application of the section 47(b) privilege are "to be resolved in favor of a finding of privilege." *Brody v. Montalbano*, 87 Cal.App.3d 725, 733, 151 Cal.Rptr. 206 (1978), *cert. denied*, 444 U.S. 844, 100 S.Ct. 87 (1979).

Defendants argue that section 47(b) bars Officer Plymale's FEHA claim, the "gravamen" of which is communications to IA regarding initiation of an investigation and communications by IA and among decision makers. Officer Plymale offers no meaningful challenge to application of the section 47(b) privilege and broadly asserts that the investigation into Officer Plymale was discriminatory and retaliatory. Such assertions are insufficient. The section 47(b) privilege bolsters dismissal of the stale FEHA claim.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.   DENIES dismissal of the section 1981 claim against Chief Dyer, Lt. Alvarado and Sgt. Salazar in their individual capacities;

2.   DISMISSES with leave to amend the section 1981 claim against the City;

3.   DISMISSES with leave to amend the section 1985(3) claim to attempt to allege particularized facts to support a section 1985(3) conspiracy and equitable tolling;

4.   DISMISSES the section 1981 and 1985(3) claims against Chief Dyer in his official capacity;

5.   DISMISSES with prejudice the FEHA claim;

6.   ORDERS Officer Plymale, no later than July 13, 2009, to: (1) file and serve a first amended complaint to cure deficiencies of the 1981 claim against the City and the section 1985(3) claim against Chief Dyer, Lt. Alvarado and Sgt. Salazar in their individual

capacities; or (2) file and serve a notice that Officer Plymale drops his section 1981 claim

against the City and/or his section 1985(3) claim; and

7.    ORDERS defendants, no later than July 27, 2009, to file and serve a response to the first

amended complaint or an answer to Officer Plymale's original complaint, as appropriate.

As such, defendants' alternative F.R.Civ.P. 12(e) and F.R.Civ.P. 12(f) motions are rendered moot.

IT IS SO ORDERED.

**Dated:**   **June 25, 2009**          _____/s/ Lawrence J. O'Neill_____
                                        UNITED STATES DISTRICT JUDGE

24