1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SEAN PLYMALE,                          CASE NO. CV F 09-0802 LJO DLB

12                   Plaintiff,              **ORDER ON DEFENDANTS'   F.R.Civ.P.
                                            12(b)(6) MOTION**
13        vs.                               (Doc. 15.)

14   CITY OF FRESNO, et al,

15                   Defendants.
     _____/

16

17                          **INTRODUCTION**

18        Defendants City of Fresno ("City") and three of its police officers[1] seek to dismiss plaintiff City

19   police officer Sean Plymale's ("Officer Plymale's") 42 U.S.C. § 1981 discrimination and 42 U.S.C. §

20   1985 conspiracy claims as lacking necessary elements and time barred.  Officer Plymale responds that

21   his claims are properly pled and invoke limitations period tolling.  This Court considered defendants'

22   F.R.Civ.P. 12(b)(6) motion on the record and VACATES the September 9, 2009 hearing, pursuant to

23   Local Rule 78-230(h).  For the reasons discussed below, this Court DISMISSES Officer Plymale's

24   claims subject to defendants' F.R.Civ.P. 12(b)(6) motion to dismiss.

25   _____

26        [1]      The defendant police officers are employed by the City's Police Department ("Department") and are
     Department Chief of Police Jerry Dyer ("Chief Dyer"), Department Lieutenant Art Alvarado ("Lt. Alvarado"), and
27   Department Sergeant Mark Salazar ("Sgt. Salazar").  Lt. Alvarado is the commander of the Department's Internal Affairs
     Unit ("IA").  Sgt. Salazar is assigned to IA and since the events at issue has been promoted to lieutenant.  The City, Chief
28   Dyer, Lt. Alvarado and Sgt. Salazar will be referred to collectively as "defendants").

                                            1

# BACKGROUND[2]

## Canine Incident

During the early morning hours of October 10, 2005, Officer Plymale, a white, 10-year police veteran, responded with a canine to a woman's call that her former boyfriend had forcibly entered her apartment and assaulted her.  Officer Plymale located the suspect and used the canine to subdue the fleeing suspect who resisted arrest and fought with the canine.  The suspect received medical care and was booked into jail.

Department Sergeant Michael Manfredi ("Sgt. Manfredi") and other officers had responded to the call.  In his opposition papers, Officer Plymale identifies Sgt. Manfredi as the "supervising shift sergeant."

On returning to his following shift, Officer Plymale dictated his report on the incident and later revised it.  Other officers prepared reports regarding the incident.

On October 13, 2005, the City paid the suspect $10,000 and obtained his release of claims against the City.

## IA Investigation And Disciplinary Action

Lt. Alvarado and Sgt. Salazar conducted an IA investigation into the canine incident.  IA interviewed Officer Plymale on October 18, 2005 and November 3, 2005.  At that time, Sgts. Salazar and Manfredi competed for a lieutenant opening.

On February 21, 2006, Officer Plymale was served with a notice of intention to terminate and an IA report which had been prepared by Sgt. Salazar and approved by Lt. Alvarado.  At a March 27, 2006 *Skelly* hearing before Chief Dyer, Officer Plymale and his counsel presented evidence that the IA report had "significant and numerous misrepresentations."  Chief Dyer was presented with "information relating to the conflict of interest and motivations" of Sgt. Salazar.

The IA investigation was "redone" by Sgt. Mindy Medina who subsequently admitted that she had not verified statements which Officer Plymale had reported were misrepresented in the earlier report.

On July 25, 2006, Officer Plymale was served with an amended notice of intention to terminate.

---

[2]   The factual recitation is derived generally from Officer Plymale's First Amended Complaint for Damages ("FAC"), the target of defendants' challenges.

On August 29, 2006, another *Skelly* hearing was conducted before Chief Dyer.  Chief Dyer signed a September 6, 2006 termination order which was served on Officer Plymale on September 13, 2006. Officer Plymale appealed the termination order on September 15, 2006.

On June 4, 2007, a hearing officer commenced a hearing on Officer Plymale's appeal.  After the hearing on June 13, 2007, the hearing officer found that Officer Plymale should not have been terminated.  On October 18, 2007, the Civil Service Board adopted the hearing officer's recommendation and ordered Officer Plymale reinstated with full back pay and benefits.

In his opposition papers, Officer Plymale reveals he "was not reinstated" and "was not offered his job back" but that the City paid his back pay after months of negotiation.

**Plaintiff's Claims**

Officer Plymale filed his original complaint on April 1, 2009, and this Court dismissed claims and granted Officer Plymale leave to amend claims.  Officer Plymale filed his FAC to allege that the IA investigations and disciplinary action "were racially motivated and/or biased against Plaintiff as a Caucasian; that had Plaintiff been Hispanic he would not have been subjected to such investigation and/or the discipline of termination."[3]  According to the FAC, "there was an environment in which Hispanic officers received preferential treatment, particularly in terms of internal investigations and resulting disciplinary actions."  The FAC alleges on information and belief that Lt. Alvarado and Sgt. Salazar "had a particular racial bias against Sgt. Manfredi and that the IA investigation was conducted to achieve the termination of Sgt. Manfredi and because of Plaintiff's refusal to cooperate in that conspiracy, the termination of Plaintiff's employment as well."  The FAC further alleges on information and belief that Officer Plymale's "association with Sgt. Manfredi exacerbated the pre-existing racially hostile environment in the Department and more specifically, the Internal Affairs Division and its conduct of the investigations of the October 10 incident."

The FAC alleges:

1.      A (first) 42 U.S.C. § 1981 ("section 1981") claim that defendants violated the Fourteenth
         Amendment by subjecting Officer Plymale to a "racially hostile work environment" and

_____

[3]      In his opposition papers, Officer Plymale appears to add that he was targeted based on his age in that he "was unfairly selected for an internal investigation because of his race and age."

3

employment discrimination; and

2.  A (second) 42 U.S.C. § 1985 ("section 1985") conspiracy claim that Chief Dyer, Lt. Alvarado and Sgt. Salazar "conspired to eliminate Sgt. Manfredi from the Department, and because Plaintiff would not falsely testify to facts helpful to such intention, Plaintiff was also a target of their conspiracy" and that the "Department's initiation and prosecution of disciplinary action for Plaintiff's October 10, 2005 conduct was retaliatory and racially motivated and was done in furtherance of the conspiracy."

The FAC seeks to recover damages for economic injury, lost wages and emotional distress, punitive damages, and attorney fees.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion Standards

Defendants raise several F.R.Civ.P. 12(b)(6) challenges to Officer Plymale's section 1981 and 1985 claims. A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines

4

that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  (Citation omitted.)

        Defendants further challenge the section 1985 claim as time barred.

        A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).  If the limitations defense is not apparent on the complaint's face and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary

1  judgment motion may be employed.  *Jablon*, 614 F.2d at 682.

2      With these standards in mind, this Court turns to defendants' challenges to Officer Plymale's

3  claims.

### Section 1985 Conspiracy

### *Requisite Elements*

6      The FAC attempts to allege a section 1985(3)[4] conspiracy claim against Chief Dyer, Lt. Alvarado

7  and Sgt. Salazar.  Defendants fault the section 1985 conspiracy claim's absence of essential elements

8  and characterize the claim as "speculative" in the absence of "specific facts from which to infer a

9  conspiracy."  Officer Plymale argues that the section 1985 claim alleges acts "to further a goal of

10  thinning out the number of older, white police officers."

11      Section 1985 proscribes conspiracies to interfere with certain civil rights.  A section 1985 claim

12  "must allege facts to support the allegation that defendants conspired together. A mere allegation of

13  conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839

14  F.2d 621, 626 (9th Cir. 1988).  A conspiracy occurs only when the parties have reached "a unity of

15  purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."

16  *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138 (1946).

17      "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to

18  deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and

---

20      [4]      Section 1985(3) provides:

21  If two or more persons in any State or Territory conspire or go in disguise on the highway or on the

22  premises of another, for the purpose of depriving, either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the
purpose of preventing or hindering the constituted authorities of any State or Territory from giving or

23  securing to all persons within such State or Territory the equal protection of the laws; or if two or more
persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote,

24  from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully
qualified person as an elector for President or Vice President, or as a Member of Congress of the United

25  States; or to injure any citizen in person or property on account of such support or advocacy; in any case
of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any

26  act in furtherance of the object of such conspiracy, whereby another is injured in his person or property,
or deprived of having and exercising any right or privilege of a citizen of the United States, the party so

27  injured or deprived may have an action for the recovery of damages occasioned by such injury or
deprivation, against any one or more of the conspirators.

28

6

immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section 1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

Defendants note the FAC's "generalized allegations of conspiracy" that Chief Dyer, Lt. Alvarado and Sgt. Salazar conspired to terminate Officer Plymale who refused to testify falsely against Sgt. Manfredi.  Defendants argue that such allegation does not fall under section 1985(3) which requires conspirators' motivated by classed-based, discriminatory animus, "<u>not</u> animus caused by the alleged refusal to participate in a scheme to provide false testimony."  (Underlining in original.)

Officer Plymale responds that the conspiracy's goal included Officer Plymale's termination which "Defendants achieved by instituting an internal affairs as a pretext."

A section 1985(3) claim "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *See Powell v. Workmen's Compensation Bd. of State of N. Y.*, 327 F.2d 131, 137 (2nd Cir. 1964).  A section 1985 claim "must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient A section 1985(3) plaintiff "may not merely make conclusory allegations of conspiracy." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d at 626.  A section 1985(3) plaintiff is "bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy.  It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants

engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell*, 327 F.2d at 137; *see Grigsby v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa. 2003). "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby*, 250 F.Supp.2d at 458.

The gist of the section 1985(3) conspiracy claim is that Lt. Alvarado and Sgt. Salazar had a racial bias against Sgt. Manfredi and projected such bias onto Officer Plymale, who was under Sgt. Manfredi's supervision and who would not testify falsely to help "eliminate Sgt. Manfredi from the Department." The section 1985(3) conspiracy claim accuses Chief Dyer of knowing of Sgt. Salazar's "misrepresentations of evidence" and failure to initiate an "investigation" into Sgt. Salazar's "misconduct." The section 1985(3) claim concludes that the "Department's initiation and prosecution of disciplinary action for Plaintiff's October 10, 2005 conduct was retaliatory and racially motivated and was done in furtherance of the conspiracy of and by Defendants."

The FAC lacks necessary elements to allege a section 1985(3) conspiracy. The FAC attempts to extrapolate a bias against Sgt. Manfredi to Officer Plymale. The FAC lacks facts of intentional and purposeful deprivation of constitutional rights in that it focuses on a conspiracy to target Officer Plymale after he refused to assist with a plot against Sgt. Manfredi. Officer Plymale points to no authority to support such a section 1985(3) conspiracy claim. Officer Plymale's reliance on selective prosecution is unavailing to support a section 1985 claim, and the FAC lacks facts that Hispanic officers were shielded from investigation, unlike Officer Plymale, when they failed to testify falsely against a fellow officer to serve Lt. Alvarado and Sgt. Salazar's purposes. Officer Plymale's claim that non-Hispanics were subjected to internal affairs proceedings to which Hispanics were not fails to support a section 1985(3) conspiracy. Moreover, the FAC is devoid of allegations of overt acts reasonably related to promote a cognizable section 1985(3) conspiracy. Officer Plymale was granted an opportunity to attempt to plead a section 1985(3) conspiracy. Officer Plymale has failed twice, and a further attempt is unwarranted.

### *Limitations Defense*

Defendants contend that the section 1985(3) conspiracy claim is further barred by the two-year

8

limitations period.  Officer Plymale argues the limitations period was tolled by an ongoing conspiracy.

Federal civil rights statutes have no independent limitations period.  *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; McDougal v. County of Imperial*, 942 F.2d 668, 673-674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983"); *Abreu v. Ramirez*, 284 F.Supp.2d 1250, 1257 (C.D. Cal. 2003).  The applicable limitations period is determined by borrowing the forum state's limitations period for personal injuries.  *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.  Section 1983 and related federal civil rights claims "are best characterized as personal injury actions."  *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[5] took effect to extend the prior limitations period for personal injury actions (and correspondingly to federal civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir. 1990)), from one year under former California Code of Civil Procedure section 340(3) to two years. *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying California law, federal civil rights claims which arise in California are generally barred if not brought within two years if they accrued after January 1, 2003.  *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993 F.2d at 711.

Federal law "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations."  *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160, 1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802.  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  "Generally, the statute of

---

[5]     Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

1  limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury."

2  *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991).  The California

3  Supreme Court has explained:

> Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run."

7  *Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 101, 132 Cal.Rptr. 657 (1976) (citations omitted).

8  "The proper focus is upon the time of the discriminatory acts, not upon the time at which the

9  consequences of the acts became most painful."  *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th

10  Cir. 1979) (addressing sex discrimination claim).

11  Defendants argue that the limitations period started no later than September 13, 2006, when

12  Officer Plymale was served with a termination notice following the second *Skelly* hearing.  Defendants

13  characterize the September 13, 2006 action as "notice of the allegedly wrongful operative decision."

14  Defendants contend that since Officer Plymale delayed to April 1, 2009 to file his action, he is unable

15  timely to allege "a conspiratorial act that injured him."

16  Citing to California, not section 1985 law, Officer Plymale argues that the limitations period was

17  tolled until a cessation of wrongful act committed to further the conspiracy.  Officer Plymale contends

18  that "Defendants perpetuated the effort to terminate Plaintiff and keep him from returning to service

19  throughout the hearing process relative to the Civil Service Board.  The continuing effort of the

20  Defendants, and the failure to return him to service, despite all evidence to the contrary, should toll the

21  statute of limitation."

22  The FAC's face reveals that alleged wrongs giving rise to Officer Plymale's section 1985(3)

23  conspiracy claim arose prior to April 1, 2007, two years prior to his filing his original complaint.  Officer

24  Plymale's reliance on tolling during the conspiracy is unavailing in the absence of alleged overt facts

25  to further a purported conspiracy.  Neither Officer Plymale nor the FAC describe post-termination facts

26  to address a continuing conspiracy.  This Court granted Officer Plymale leave to attempt to plead facts

27  to support equitable tolling.  Officer Plymale chose not to do so.  Officer Plymale fails to satisfy his

28  burden that he is entitled to tolling of any kind.  The two-year limitations period bolsters dismissal of

1  the section 1985(3) conspiracy claim.

2  **Section 1981 Discrimination**

3  _____***Monell Liability***

4  Defendants argue that the FAC fails to allege a *Monell* claim against the City in the absence of

5  allegations of a requisite policy or custom attributable to City policymakers.  Officer Plymale responds

6  that "an allegation based on nothing more than a bare averment that the official's conduct conformed

7  to official policy, custom or practice suffices to state a *Monell* claim."

8  Section 1981 provides in pertinent part:

9  (a) Statement of equal rights

10  All persons within the jurisdiction of the United States shall have the same right
in every State and Territory to make and enforce contracts, to sue, be parties, give
11  evidence, and to the full and equal benefit of all laws and proceedings for the security of
persons and property as is enjoyed by white citizens, and shall be subject to like
12  punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
other.

13  . . .

14  (c) Protection against impairment

15  The rights protected by this section are protected against impairment by
16  nongovernmental discrimination and impairment under color of State law.

17  Section 1981 "by its broad terms, . . . proscribe[s] discrimination in the making or enforcement

18  of contracts against, or in favor of, any race."  *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273,

19  295, 96 S.Ct. 2574 (1976).

20  A local government unit may not be held liable for the acts of its employees under a respondeat

21  superior theory.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

22  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

23  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "Federal case law

24  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

25  1983."  *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

26  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

27  result of a 'policy or custom' of that state actor."  *African American Contractors*, 96 F.3d at 1215.

28  As to section 1981(c), Congress intended to "import . . . the traditional 'policy or custom

11

requirement set forth in *Monell*." *African American Contractors*, 96 F.3d at 1215.  In *African American Contractors*, 96 F.3d at 1215, the Ninth Circuit concluded:

> In our view, the language of § 1981(c), considered in the context of the long history of federal case law precluding respondeat superior liability for state actors, is conclusive evidence that the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom' requirement in suits against state actors.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1.  An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2.  A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3.  Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*,

1    *Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997).  "[E]xistence of a policy, without more, is insufficient

2    to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).  However,

3    "municipal liability may be imposed for a single decision by municipal policymakers under appropriate

4    circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

5        "More importantly, where action is directed by those who establish governmental policy, the

6    municipality is equally responsible whether that action is to be taken only once or to be taken

7    repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292.  Local government liability is based on

8    "whether governmental officials are final policymakers for the local government in a particular area, or

9    on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

10       To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city

11   itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff

12   must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d

13   762, 767 (5th Cir. 1984).

14       Defendants notes that the FAC attempts to impose *Monell* liability "premised on" Chief Dyer's

15   decision to terminate Officer Plymale and Chief Dyer "as a final policymaker."  As to Chief Dyer, the

16   FAC alleges:

17       1.   "[A]s the Chief of Police, Defendant Dyer is vested with the power and authority to make

18            and approve policies relating to the Fresno Police Department and its operations, as well

19            as decisions relating to personnel, including but not limited to, initiation of internal

20            investigations and imposition of disciplinary actions";

21       2.   "Defendant Dyer had the authority to and did order or prevent initiation of investigations

22            of misconduct, whether or not official written policy required an investigation";

23       3.   "Defendant Dyer had the authority to and did decline discipline or impose a lower form

24            of discipline as to some preferred officers"; and

25       4.   "Defendant Dyer was aware of the preferential treatment of Hispanic officers by

26            Defendants Salazar and Alvarado and ratified the same at least in part for the support of

27            the Hispanic Police Officers Association in terms of Defendant Dyer's position as the

28            Chief of Police."

Officer Plymale argues that his section 1981 claim against the City is viable based on allegations that:

    1.    Hispanic officers received preferential treatment, particularly as to internal investigations;

    2.    Chief Dyer exercised discretion relative to internal affairs such that non-Hispanics were subject to investigation and discipline in a disparate manner; and

    3.    Chief Dyer was empowered and authorized to make and approve Department policies and decisions regarding personnel, including initiation of internal investigations and imposition of disciplinary actions.

Officer Plymale concludes that such allegations infer "that Chief Dyer instigated this custom and practice, or, at least, was deliberately indifferent to it and ratified it." Officer Plymale contends that "Chief Dyer's policy favoring Hispanics in the internal proceedings was causally related to interference with Plaintiff's contract of employment."

The gist of the section 1981 discrimination allegations against the City is that Chief Dyer had authority regarding officer discipline and investigations and deferred to Lt. Alvarado and Sgt. Salazar. Like the original complaint, the FAC lacks specific facts to identify or describe a policy or custom to invoke a section 1981 claim. The FAC improperly attempts to transpose Chief Dyer's authority into a policy to favor Hispanics at Officer Plymale's expense. The FAC lacks sufficient facts to support Officer Plymale's claim that "Chief Dyer made the policy concerning preferential treatment."

The FAC acknowledges that Chief Dyer lacked final authority over Officer Plymale's termination in that the Civil Service Board adopted a hearing officer's recommendation to reinstate Officer Plymale. *See Bechtel v. City of Belton*, 250 F.3d 1157, 1161, n. 5 (8th Cir. 2001) (plaintiff's "participation in the City's appellate procedure confirms his recognition of the final authority of the City Administrator over personnel matters.") Officer Plymale is unable to invoke *Monell* liability from Chief Dyer's termination order. Personnel decisions are not a custom or policy to invoke *Monell* liability. Officer Plymale makes unavailing points regarding the hearing officer's determination that the employment decision was erroneous and the Civil Service Board's failure to overrule Chief Dyer regarding "the actual basis for the termination."

1    Defendants further argue that the FAC fails to establish *Monell* liability from Chief Dyer's

2  ratification of Lt. Alvarado and Sgt. Salazar's wrongs. "A municipality also can be liable for an isolated

3  constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176

4  F.3d 1231, 1238 (9th Cir. 1999), *cert. denied*, 528 U.S. 928, 120 S.Ct. 324 (1999); *see Praprotnik*, 485

5  U.S. at 127, 108 S.Ct. 915.   To show ratification, a plaintiff must prove that the "authorized

6  policymakers approve a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127, 108

7  S.Ct. 915; *see Gillette*, 979 F.2d at 1348 (refusing to find ratification, because "[t]here is no evidence

8  that the City manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it").

9  Accordingly, ratification requires, among other things, "knowledge of the alleged constitutional

10  violation." *Christie*, 176 F.3d at 1239; *see Garrison v. Burke*, 165 F.3d 565, 572 n. 6 (7th Cir.1999)

11  (holding that the municipality was not liable under § 1983, because it had no knowledge of the alleged

12  constitutional violations); *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir.1998) (stating a similar

13  proposition).   "If the mere exercise of discretion by an employee could give rise to a constitutional

14  violation, the result would be indistinguishable from respondeat superior liability." *Praprotnik*, 485 U.S.

15  at 126, 108 S.Ct. 915.

16    The FAC alleges that Chief Dyer had authority in personnel matters and ratified Lt. Alvarado and

17  Sgt. Salazar's preferential treatment of Hispanic officers to "support" the Hispanic Officers Association.

18  Although the FAC makes a conclusory allegation the Chief Dyer ratified subordinates' decisions, the

19  FAC fails to allege facts of the basis for such ratification and Chief Dyer's knowledge of alleged

20  constitutional violations.   Chief Dyer's alleged knowledge of preferential treatment of Hispanic officers

21  does not extrapolate to knowledge of discriminatory practices against Officer Plymale.   The FAC alleges

22  no more than Chief Dyer's exercise of discretion, not exercise of unconstitutional policies or customs

23  or ratification of unconstitutional acts.   Absence of wrongful conduct conforming to an official policy,

24  custom or practice dooms Officer Plymale's section 1981 claim against the City.   "Since it is clear that

25  no state policy served as the 'moving force' behind the violation, there was no proximately causality

26  between the municipality's acts and the disclosure." *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir.

27  2000).

28  / / /

15

**Request To Amend**

As an alternative to dismissal, Officer Plymale requests another attempt to amend his complaint. This Court's June 25, 2009 order clearly delineated deficiencies in Officer Plymale's claims and granted Officer Plymale an opportunity to cure the deficiencies.  Officer Plymale is either unwilling or unable to cure the deficiencies, as evidenced by the FAC.  Officer Plymale appears to acknowledge as much with his "one more chance" approach.  A further attempt to amend would serve only to delay resolution of Officer Plymale's remaining claim.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice the section 1985 claim;

2.      DISMISSES with prejudice this action against the City;

3.      DIRECTS the clerk to enter judgment in favor of the City of Fresno and against plaintiff Sean Plymale; and

4.      ORDERS Chief Dyer, Lt. Alvarado and Sgt. Salazar, no later than September 14, 2009, to file an answer to the sole remaining section 1981 claim against them.

IT IS SO ORDERED.

**Dated:   September 3, 2009           /s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE