**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEAN PLYMALE, | CASE NO. CV F 09-0802 LJO MJS |
| Plaintiff, | **SUMMARY JUDGMENT DECISION** |
| vs. | (Doc. 41.) |
| JERRY DYER, et al., | |
| Defendants. | |
| _____/ | |

**INTRODUCTION**

Defendants Jerry Dyer ("Chief Dyer") and Mark Salazar ("Sgt. Salazar") seek summary judgment in the absence of evidence to support plaintiff Sean Plymale's ("Officer Plymale's")[1] 42 U.S.C. § 1981 ("section 1981") discrimination claims arising from an internal affairs ("IA") investigation in connection with the arrest and charging of a suspect. Officer Plymale's opposition papers appear to claim that defendants treat Hispanic police officers more favorably than white officers in IA investigations. This Court considered Chief Dyer and Sgt. Salazar's (collectively "defendants'") summary judgment motion on the record[2] and VACATES the November 28, 2011 hearing, pursuant to Local Rule 230(g). For the

---

[1] Chief Dyer is the City of Fresno ("City") Police Chief. Sgt. Salazar is a City police sergeant. Officer Plymale is a City police officer. The City is no longer a defendant.

[2] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

1

reasons discussed below, this Court GRANTS defendants summary judgment.

# BACKGROUND

## Summary

Sgt. Salazar conducted an IA investigation into the arrest and charges against Rolando Celdon ("Mr. Celdon"). After the investigation, disciplinary action resulted in a decision to terminate Officer Plymale, who is white. However, after administrative appeals, Officer Plymale was reinstated with a letter of reprimand. Officer Plymale proceeds on his First Amended Complaint for Damages ("FAC") to allege that he was subjected to IA investigations and disciplinary action which were racially motivated or biased against him. Defendants seek summary judgment in that Officer Plymale is unable to raise factual issues that he was subjected to adverse employment action based on discrimination. Defendants further contend that immunities bar Officer Plymale's claims. Officer Plymale's opposition papers do not include points and authorities and chiefly respond to defendants' factual statement.

## Initial Investigation Into Mr. Celdon's Arrest

On October 10, 2005, Officer Plymale and three other City police officers were involved in Mr. Celdon's arrest. Mr. Celdon claimed that during the arrest, he was punched, kicked, bitten by a police dog, tasered, and shot by a less lethal shotgun. Mr. Celdon was taken for medical care and booked in jail.[3]

In response to a complaint from an assisting City police officer, an IA investigation was commenced on October 10, 2005. As commander of the IA division, former City police Lieutenant Art Alvarado ("Lt. Alvarado")[4] assigned the IA investigation to then Sgt. Salazar.[5] In his declaration, Lt. Alvarado states that Sgt. Salazar's "responsibility was to investigate the matter to determine if he believed the evidence supported a violation of policy." Sgt. Salazar made no recommendation as to

---

[3] On October 13, 2005, the City obtained Mr. Celdon's release from claims in exchange for $10,000.

[4] Lt. Alvarado retired as a City police officer in July 2010.

[5] Since his involvement in the events giving rise to Officer Plymale's claims, Sgt. Salazar has been elevated to lieutenant.

2

discipline.

Sgt. Salazar devoted approximately 300 hours to the investigation which he characterizes as "complex." Sgt. Salazar interviewed more than 20 individuals and reviewed "numerous" documents. Sgt. Salazar declares that he "prepared an approximately 70 page report[6] which summarized my investigation and findings in which, in part, I found that Plaintiff violated several rules and regulations in his conduct at the scene and/or afterwards" and including joking about the use of force at a briefing, material inaccuracies in his initial report, moving evidence at the scene, and denial that he witnessed use of force by other officers. Sgt. Salazar concluded that Officer Plymale did not use excessive force as to his canine application, taser use, and punching Mr. Celdon. Sgt. Salazar's initial investigation report was forwarded to Chief Dyer.

### **Additional Investigation Into Officer Plymale's Conduct**

On February 21, 2006, Chief Dyer issued a Notice of Proposed Disciplinary Action to Plymale to review charges and investigation material, to allow Officer Plymale to offer evidence and mitigating circumstances, and to discuss issues at a *Skelly* meeting. At a March 27, 2006 *Skelly* hearing with Chief Dyer, Officer Plymale and his attorney raised issues regarding the incident and investigation. Based on issues raised by Officer Plymale and other officers, Chief Dyer directed the IA division to conduct additional work.

Because Sgt. Salazar had left the IA division, City police Sergeant Mindy Medina ("Sgt. Medina")[7] conducted further investigation. Sgt. Medina analyzed Sgt. Salazar's initial investigation report and underlying witness interviews, interviewed or re-interviewed approximately ten witnesses, and reviewed additional documents. On July 10, 2006, Sgt. Medina provided Chief Dyer her 24-page memorandum which concluded:

> A review of this investigation determined the original findings were correct and warranted no changes. Although the issue regarding Manfredi keeping Coleman's report open for over an hour was resolved, the integrity violation still stands based on the other circumstances outlined in the original investigation.

---

[6] Sgt. Salazar's report is date December 15, 2005. Officer Plymale notes that Sgt. Salazar supplemented the report "to correct and add information" after meeting with Lt. Alvarado and City Attorneys.

[7] Since the events at issue in this action, Sgt. Medina has changed her last name to Castro.

**Termination Decision**

On July 24, 2006, Chief Dyer issued an Amended Notice of Proposed Disciplinary Action and conducted another *Skelly* hearing with Officer Plymale and his attorney.[8] Chief Dyer decided to terminate Officer Plymale and issued a September 6, 2006 termination order which stated in part:

> You wrote a police report in regards to the incident 20 hours after it occurred. Your draft report said the suspect picked up a beer bottle while struggling with the K-9. The next night, you changed your report to read that the suspect reached for the beer bottle, but did not pick it up. Your report did not contain any information as to how the bottle was later recovered for evidence.[9]
>
> . . .
>
> During the Internal Affairs investigation, you said you did not see any force used by the two assisting officers. You said you did not hear any comments by the same two officers about a "nut shot" while on the scene. You said you walked away and you never saw a struggle between the suspect and the officer that kicked him and didn't know until afterwards that the suspect had been struck with less lethal rounds. You said you didn't watch what was happening between the suspect and the officer dealing with him even though you knew the suspect was bigger than the officer, you believed the suspect was under the influence of a possible controlled substance, the suspect had a high pain tolerance, the dog bite had had no effect on the suspect and the taser had no effect on the suspect.
>
> Officers who witnessed the incident said you were facing the suspect and were in a position to clearly see the force used against him. By your own estimate, you were only ten feet away from the suspect and the officer kicking him. By all accounts, the scene was well lit enough for you to see what was happening ten feet in front of you. Based on your statement and the statement of witnesses, it is unreasonable to believe you did not see any force used against the suspect by other officers that night.
>
> You assumed that a beer bottle located about 75 yards away from the suspect was the same shiny object you saw while the suspect was struggling with the K-9. You tampered with the evidence by picking up the beer bottle and dropping it next to the suspect. Your report did not explain how the bottle was recovered and why you believed it was the one nearby the suspect, even though you found it about 75 yards away. The beer bottle was the basis for which you charged the suspect with the felony PC 417.8, assaulting a peace officer with a dangerous weapon.

/ / /

---

[8]   Defendants note that during his two *Skelly* hearings, Officer Plymale did not communicate to Chief Dyer that Officer Plymale believed Sgt. Salazar's investigation was racially biased.

[9]   Officer Plymale notes that he "changed the draft of his report to eliminate the language indicating Celdon picked up the bottle because he realized he could not testify to having seen that occur" and "had not yet submitted the finalized report to anyone when he made the change." Officer Plymale further notes that Sgt. Salazar's report omitted that Officer Plymale had "left his report in draft form during the early morning hours of October 11 (24 hours after the Celdon Incident) before the IA was opened" to raise the inference that "even before the IA was initiated Plymale intended to change or refine his report."

**Appeal Of Termination Decision**

On Officer Plymale's appeal of the termination decision, the hearing officer's October 2, 2007 report recommended a written reprimand rather than termination. The hearing officer noted:

> <u>Beer Bottle</u>: Changing of the report in this regard, while neglectful, does not rise to justify a heavy level of discipline relative to other events.
>
> <u>Changing the Report</u>: Failure to remove the 417.8 charge against the suspect is not at fault. The District Attorney has a much, or more, authority in reviewing reports to determine whether or not "brandishing of a weapon" should continue. While neglectful on the part of Appellant, this could have been caught at various levels by various persons in the chain of command.
>
> <u>The Viewing of Force by Other Officers</u>: The City did not carry its burden of proof that the Appellant did, or should have, observed and reported on inappropriate use of force. The Appellant's perception is reasonable that he concentrated on his own injury, and that potentially of Tymo, rather than concentrating on his fellow officers. . . .
>
> . . .
>
> <u>Falsification of Report</u>: As indicated above, the Appellant did wrongfully move the bottle, but the City carried no convincing burden that his report was falsified, rather than merely changed for clarity.
>
> . . .
>
> The Department concluded that the Appellant's change in his Incident Report constituted false information. That, again, is "stretching" his actions to something negative and nefarious, rather than merely clarifying. This not to say that Mr. Plymale did not attempt to fault the suspect more than actually occurred. . . .
>
> . . .
>
> . . . The City shall issue a notice of Written Reprimand for the record, relative to the undersigned's findings and conclusions that the Appellant did violate City rules relative to the movement of evidence and inappropriate verbal remarks at roll call.

The Civil Service Board's ("CSB's") November 1, 2007 order adopted the hearing officer's recommendations, ordered Officer Plymale reinstated with a letter of reprimand, and found that Officer Plymale:

1. "[E]ngaged in misconduct at the scene of a K9 capture and arrest of a suspect on October 10, 2005, by moving a beer bottle that Appellant assumed was a shiny object that the suspect was holding next to the suspect. Appellant moved the beer bottle seventy-five yards from where Appellant discovered it"; and

2. "[A]dmitted Appellant engaged in misconduct and conduct unbecoming on October 11,

> 2005, at the midnight briefing regarding the October 10, 2005 incident. At the briefing, Appellant made inappropriate remarks by nicknaming an officer "Place Kicker Paul." The nickname was in reference to the officer's manner in kicking the suspect during the October 10, 2005 incident."

Officer Plymale did not seek judicial review of the CSB findings.

### Federal Criminal Charges

On October 7, 2010, a federal indictment was filed to charge Officer Plymale with misprison of a felony in violation of 18 U.S.C. § 4 and obstruction of justice in violation of 18 U.S.C. § 1519 in that Officer Plymale included in his report a false description of the circumstances surrounding Mr. Celdon's arrest. Defendants note that during discovery, Officer Plymale has invoked the Fifth Amendment as to all issues involving Mr. Celdon as well as Officer Plymale's conduct, investigation and reports.

### Officer Plymale's Claims

The FAC alleges that the IA investigations and Officer Plymale's disciplinary action "were racially motivated and/or biased against Plaintiff as a Caucasian; that had Plaintiff been Hispanic he would not have been subjected to such investigation and/or the discipline of termination." According to the FAC, "there was an environment in which Hispanic officers received preferential treatment, particularly in terms of internal investigations and resulting disciplinary actions." The FAC alleges on information and belief that Lt. Alvarado and Sgt. Salazar "had a particular racial bias against Sgt. Manfredi[10] and that the IA investigation was conducted to achieve the termination of Sgt. Manfredi and because of Plaintiff's refusal to cooperate in that conspiracy, the termination of Plaintiff's employment as well." The FAC further alleges on information and belief that Officer Plymale's "association with Sgt. Manfredi exacerbated the pre-existing racially hostile environment in the Department and more specifically, the Internal Affairs Division and its conduct of the investigations of the October 10 incident." The FAC alleges a sole remaining section 1981 claim that defendants violated the Fourteenth Amendment by subjecting Officer Plymale to a "racially hostile work environment" and employment discrimination.

---

[10]   City police Sergeant Michael Manfredi ("Sgt. Manfredi") was involved in Mr. Celdon's arrest.

The FAC seeks to recover damages for economic injury, lost wages and emotional distress, punitive damages, and attorney fees.

## DISCUSSION

### Summary Judgment Standards

Defendants seek summary judgment on Officer Plymale's remaining section 1981 claim in the absence of evidence that Officer Plymale suffered adverse employment action based on "discriminatory reasons" and based on immunities to bar his section 1981 claim.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

As discussed below, defendants demonstrate the absence of disputed material facts and that they are entitled to judgment as a matter of law.

**Section 1981 Discrimination**

Section 1981 provides in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

. . .

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Section 1981 "by its broad terms, . . . proscribe[s] discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 295, 96 S.Ct. 2574 (1976). Under section 1981, "discrimination based on 'ancestry or ethnic characteristics' is prohibited." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).

1    Defendants note that elements of a section 1981 claim in the employment context are "akin" to a Title VII race discrimination claim for disparate treatment. *See Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Jones v. Robinson Property Group*, 427 F.3d 987, 992 (5th Cir. 2005) ("analysis under both statutes are identical"). "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case. . . . Both require proof of discriminatory treatment . . ." *Fonseca*, 374 F.3d at 850.

Defendants place on a section 1981 and/or Title VII plaintiff the burden to prove that the "plaintiff's race was a motivating factor for the defendant's adverse action." *See Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir. 1995) ("plaintiff has the ultimate burden of proving, either directly or indirectly, that his discharge was motivated by racial basis.") Defendants further hold Officer Plymale to establish that each defendant was involved personally in Officer Plymale's adverse action and intentionally infringed on Section 1981 rights. *Cardenas v. Massey*, 269 F.3d 251, 268 (3rd Cir. 2001) (individual liability arises under section 1981 when a defendant "intentionally" causes an infringement of section 1981 rights, regardless of whether the employer may also be held liable).

Without stating as much, defendants appear to apply portions of the *McDonnell Douglas*[11] burden-shifting framework applicable to Title VII discrimination. "At the first step of *McDonnell Douglas*, the plaintiff must establish a prima facie case of discrimination or retaliation." *Metoyer v. Chassman*, 504 F.3d 919, 931, n.6 (9th Cir. 2007). "If the plaintiff makes out her prima facie case of either discrimination or retaliation, the burden then 'shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory [or retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)); *see Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal.App.4th 986, 1020, 93 Cal.Rptr.3d 338 (2009). "Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the ususal standard of proof required'" under F.R.Civ.P. 56(c)(1). *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

---

[11] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

2006) (citations and internal quotation marks omitted)). If the employer carries its burden, plaintiff must have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 804; 93 S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997).

With these section 1981 and discrimination concepts in mind, this Court next analyzes Officer Plymale's section 1981 claims against each defendant.

## Sgt. Salazar's Section 1981 Liability

Defendants contend that Sgt. Salazar is not subject to section 1981 liability because the IA investigation "was not undertaken for discriminatory reasons . . . to amount to an adverse employment action."

### *Adverse Action*

Defendants argue that the IA investigation, undertaken without discriminatory reasons, is not an adverse action. *See McRae v. Department of Corrections and Rehabilitation*, 142 Cal.App.4th 377, 392, 48 Cal.Rptr.3d 313 (2006) ("the investigation itself, irrespective of the reasons for its initiation or its outcome, made no material change in the terms or conditions of . . . employment"); *Harrison v. City of Akron*, 43 Fed.Appx. 903, 905 (6th Cir. 2002) ("investigations are not adverse actions"); *Ware v. Billington*, 344 F.Supp.2d 63, 76 (D.D.C. 2004) ("although the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not").

Defendants are correct that Sgt. Salazar's initiation and conduct of the IA investigation is not an adverse action to support a section 1981 claim against him. Officer Plymale appears to agree in that he notes that "the initiation of the IA is not the focus" of Officer Plymale's complaint.

### *Discriminatory Intent*

Defendants argue that Officer Plymale lacks evidence to create an inference that Sgt. Salazar intended to discriminate against Officer Plymale based on Officer Plymale's race. Defendants point to Officer Plymale's deposition testimony:

Q. . . . In your interactions with Salazar, did you ever hear him make disparaging

11

| | | |
|---|---|---|
| 1 | | comments about Caucasians? |
| 2 | A. | Not that I recall. |
| 3 | Q. | . . . Do you believe that he had a racial animus towards Caucasians? |
| 4 | A. | Yes. |
| 5 | Q. | And what's the basis of that belief, sir? |
| 6 | A. | My understanding is he is heavily involved in the Hispanic Peace Officers Association. My understanding is also that his wife or family, I should say, has some involvement in Hispanic community interests. I think that pretty well gives you an overview of . . . |
| 9 | Q. | Is there anything else that is the basis of your opinion why he acts more favorably to Hispanics over other ethnic groups? |
| 11 | A. | Not as I recall off the top of my head. |
| 12 | Q. | . . . As far as the family and the Hispanic community interest, do you have any more details as far as that goes? |
| 14 | A. | I don't. |

Officer Plymale appears to rest Sgt. Salazar's purported discriminatory intent on his claim that Sgt. Salazar "has a reputation for giving preferential treatment to Hispanic officers." Officer Plymale notes that Sgt. Salazar did not open an IA investigation after Chief Dyer assigned him "to 'look into' an incident involving four Hispanic officers's being drunk in public" at a police officers' association function.

Nothing in the record raises an inference that Officer Plymale's race motivated Sgt. Salazar's findings. At most, Officer Plymale speculates that Sgt. Salazar favors Hispanics. Even assuming such favoritism, there is no evidence to suggest that Sgt. Salazar harbored a racially discriminatory intent as to Officer Plymale.

### *Legitimate, Non-Discriminatory Basis*

Defendants argue that Officer Plymale lacks a section 1981 claim against Sgt. Salazar in that Sgt. Salazar "had a legitimate non-discriminatory basis for his conduct." Defendants point to the following:

1. A white police officer complained about the conduct underlying the IA investigation;
2. Five different methods of force were used against Mr. Celdon;

3. Lt. Alvarado directed Sgt. Salazar to conduct the IA investigation;

4. Sgt. Salazar devoted 300 hours to perform his investigation, including interviewing witnesses and gathering many documents;

5. Officer Plymale is unable to identify a witness or other evidence which he desired Sgt. Salazar to have considered;

6. There is no evidence that Sgt. Salazar handled the investigation differently than other investigations involving non-whites;

7. Officer Plymale's initial report indicated that Mr. Celdon had picked up a beer bottle while struggling with the K-9 but Officer Plymale later indicated Mr. Celdon did not do so;

8. Officer Plymale changed his report after learning of potential investigation;

9. Officer Plymale charged Mr. Celdon with violation of California Penal Code section 417.8 based on Mr. Celdon's use of a bottle but failed to notify anyone that the charges needed to be amended based on his revised report;

10. Officer Plymale picked up a bottle from a significant distance from his interaction with Mr. Celdon and placed in the area of the altercation for photographing but omitted his action and reasons in his report;

11. Officer Plymale referred to the officer who kicked Mr. Celdon as "place kicker Paul" in a briefing;

12. Officer Plymale in his two *Skelly* hearings did not communicate to Chief Dyer that Sgt. Salazar's investigation was racially biased;

13. Sgt. Medina, who is white, devoted 200 hours to follow up Sgt. Salazar's investigation and concurred with his conclusions; and

14. Sgt. Salazar concluded that Officer Plymale did not apply excessive force although Sgt. Salazar found other officers had.

Defendants raise legitimate, non-discriminatory reasons for Sgt. Salazar's findings. Officer Plymale offers nothing to challenge the legitimate, non-discriminatory reasons. Officer Plymale's section 1981 claim against Sgt. Salazar fails.

**Chief Dyer's Section 1981 Liability**

*Discriminatory Intent*

Defendants argue that Officer Plymale's section 1981 claim against Chief Dyer fails in the absence of Chief Dyer's "discriminatory animus in issuing the order of termination." Defendants point to Officer Plymale's deposition testimony wherein Officer Plymale answered "No" in response to questions:

1. "Do you have a belief that Chief Dyer has a racial animus towards Caucasians in comparison to other ethnic groups?"; and
2. "In either on of the Skelly hearings that you had with the Chief or your interaction with the Chief during the course of this investigation and prior to the order of termination, did you feel that he took any action against you that was based upon racial animus?"

The record is devoid of evidence or inferences of Chief Dyer's discriminatory intent.

*Legitimate, Non-Discriminatory Basis*

Defendants argue that the following demonstrates the "legitimacy" of Chief Dyer's actions:

1. Chief Dyer called for a reinvestigation after Officer Plymale's first *Skelly* hearing and offered Officer Plymale a second *Skelly* hearing;
2. Sgt. Medina's investigation concurred with Sgt. Salazar's findings as to Officer Plymale;
3. Chief Dyer agreed that Officer Plymale did not apply excessive force during the incident with Mr. Celdon;
4. The CSB confirmed several of Chief Dyer's findings; and
5. There is no evidence that Chief Dyer treated Officer Plymale's disciplinary decision differently because it involved white officers.

Officer Plymale offers nothing to raise a factual issue as to Chief Dyer's legitimate, non-discriminatory basis for his actions toward Officer Plymale.

**CSB Findings**

Defendants argue that the CSB findings preclusively bar Officer Plymale's section 1981 claims. Defendants argue that unreviewed administrative proceedings have preclusive effect when a state agency resolves disputed issues properly before it. "When an administrative agency is acting in a judicial

capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421, 86 S.Ct. 3220 (1966).

A failure to challenge an agency's administrative decision rendered in its judicial or quasi-judicial capacity entitles that decision to have preclusive effect in all subsequent actions. Before pursuing a claim for damages, a plaintiff first must have the agency decision reviewed and set aside by the superior court in an administrative mandamus proceeding. *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 65, 69-71, 99 Cal.Rptr.2d 316, 319 (2000); *Westlake Community Hosp. v. Superior Court*, 17 Cal.3d 465, 482-485 (1976) (defendants were entitled to summary judgment against a doctor whose staff privileges were revoked by a hospital pursuant to a quasi-judicial proceeding, where affidavits established that plaintiff did not challenge the revocation through a mandamus action prior to instituting the damage action). Where an administrative decision is quasi-judicial in nature (notice and hearing provided) and is subject to judicial review, such review must be sought. *Johnson*, 24 Cal.4th at 65, 99 Cal.Rptr.2d 316. "[U]nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." *Johnson*, 24 Cal.4th at 65, 99 Cal.Rptr.2d 316.

Defendants point to the CSB findings that Officer Plymale violated City police department policy by moving a bottle 75 yards and placing it next to Mr. Celdon and by making the "place kicker Paul" comment during a briefing. Defendants argue that since Officer Plymale failed to appeal the CSB findings, he is precluded to assert that defendants' similar findings "are somehow racially biased or pretextual."

The unchallenged CSB findings further support the absence of defendants' racially biased or pretextual action against Officer Plymale.

### *Federal Indictment*

Defendants argue that the federal indictment precludes Officer Plymale to challenge defendants' findings as based on pretext or racial animus in that the indictment charges Officer Plymale with including in his report a false description of the circumstances surrounding Mr. Celdon's arrest.

The "finding of an indictment, fair upon its face, by a properly constituted grand jury,

conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir.2002).

Similar to the CSB findings, the federal indictment against Officer Plymale further supports the absence of defendants' racially biased or pretextual action against Officer Plymale.

### *Fifth Amendment Privilege*

Defendants contend that Officer Plymale's invocation of the Fifth Amendment privilege precludes him to introduce "evidence of pretext or racial animus" on the part of defendants. Defendants note that Officer Plymale fails to dispute that he invoked the Fifth Amendment privilege as to any question involving the incident with Mr. Celdon and Officer Plymale's reports and investigation. Defendants point to following colloquy during Officer Plymale's deposition testimony:

> Q.   Is it fair to say to say that any question regarding whether Officer Salazar acted improperly during the course of the investigation is going to be met with the Fifth Amendment?
>
> MS. CHURCH: To the extent that it involves discussion of the underlying events, yes.
>
> BY MR. RUBIN:
>
> Q.   . . . Well, other than discussions of the underlying events, is there something you believe that Salazar did that was improper during the course of his investigation?
>
> A.   Not – not that comes to mind . . . at this point.

"While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby." *Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213, 227 (D.Kan.1979). Thus, "a civil plaintiff has no absolute right to both his silence and his lawsuit." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979). In *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969), the Ninth Circuit Court of Appeals explained:

> The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion.

Officer Plymale is unable to benefit in this action from invocation of the Fifth Amendment.

Defendants lack an interest in the federal prosecution. To the extent that the Fifth Amendment invocation limits evidence, such restriction is not a bar to summary judgment for defendants.

## Qualified Immunity

Defendants argue that they are entitled to qualified immunity to bar Officer Plymale's section 1981 claims.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *see Bisbee v. Bey*, 39 F.3d 1096, 1102 (qualified immunity available in 42 U.S.C. § 1985 action).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). To analyze qualified immunity, a court determines: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540 (1988). In *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006), the Ninth Circuit explained in greater detail:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?" If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted. That is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the officer could have believed, "reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right." If the answer is yes, the officer is entitled to qualified immunity. If the answer is no, he is not. (Footnotes omitted.)

Defendants ask this Court to evaluate qualified immunity "in light of the clear authority that to maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct."

As discussed above, Officer Plymale fails to establish violation of a clearly established statutory or constitutional right. Qualified immunity further supports summary judgment for defendants.

**California Civil Code Section 47 Privilege**

Defendants argue that the absolute privilege under California Civil Code section 47 ("section 47") defeats Officer Plymale's section 1981 claims.

Section 47(b) renders as privileged a publication or broadcast "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . ."

The section 47(b) privilege is "absolute" and "bars all tort causes of action except a claim for malicious prosecution." *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 808, 81 P.3d 244 (2004). The "privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212, 786 P.2d 365 (1990).

The section 47(b) privilege "applies not only to judicial proceedings but to all truth-seeking inquiries, including legislative and other official proceedings." *Crowley v. Katleman*, 8 Cal.4th 666, 695, 34 Cal.Rptr.2d 386 (1994). The privilege is not limited to statements made during trial or other proceedings "but may extend to steps taken prior thereto or afterwards." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057, 128 P.3d 713 (2006). Communications do not fall outside the section 47 privilege "simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal. This is assuming, of course, that the communications are 'logically related' to the litigation" or official proceeding. *Kashian v. Harriman*, 98 Cal.App.4th 892, 920, 120 Cal.Rptr.2d 576 (2002). Doubts as to application of the section 47(b) privilege are "to be resolved in favor of a finding of privilege." *Brody v. Montalbano*, 87 Cal.App.3d 725, 733, 151 Cal.Rptr. 206 (1978), *cert. denied*, 444 U.S. 844, 100 S.Ct. 87 (1979).

Defendants argue the "official proceeding" or "other proceeding authorized by law" extends to investigatory activities, such as those subject to Officer Plymale's claims. Officer Plymale offers no opposition to defense arguments to further support summary judgment for defendants.

**California Government Code Section 821.6 Privilege**

Defendants further seek to invoke the privilege under California Government Code section 821.6, which provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." *Gillan v. City of San Marino,* 147 Cal.App.4th 1033, 1048, 55 Cal.Rptr.3d 158 (2007). "Investigations are considered to be part of judicial and administrative proceedings for purposes of section 821.6 immunity." *Richardson-Tunnell v. School Ins. Program for Employees (SIPE),* 157 Cal.App.4th 1056, 1062, 69 Cal.Rptr.3d 176 (2007). "An investigation is cloaked in immunity because it is an essential step to instituting administrative proceedings." *Richardson-Tunnell,* 157 Cal.App.4th at 1062, 69 Cal.Rptr.3d 176.

Defendants note that section 821.6 immunity applies to public employment investigations for possible disciplinary proceedings. "The investigation, the preliminary notice and the proceedings before the civil service commission come within the scope of an 'administrative proceeding' as that term is used in Government Code section 821.6. It follows that pursuant to section 821.6, [defendants] are immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding." *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1438, 246 Cal.Rptr. 609 (1988). "Government Code section 821.6 extends to the pursuit of proceedings within the scope of the employee's assigned employment; the immunity is not limited to activities lawfully performed." *Rosenthal v. Vogt*, 229 Cal.App.3d 69, 75, 280 Cal.Rptr. 1 (1991).

Defendants argues that section 821.6 immunity precludes liability "predicated on a personnel investigation or its outcome." This Court construes Officer Plymale's absence of opposition to section 821.6 immunity as his concession that it applies to defendants. Defendants are correct that section 821.6 immunity further supports summary judgment for defendants.

**Punitive Damages**

Defendants contend that the record fails to raise a factual issue that Officer Plymale is entitled to punitive damages.

"A prevailing plaintiff in a cause of action under § 1981 is entitled under the common law to punitive damages . . . 'for conduct [by the defendant] exhibiting malice, an evil motive, or recklessness or callous indifference to a federally protected right.'" *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000) (quoting *Stephens v. South Atlantic Canners, Inc.*, 848 F.2d 484, 489 (4th Cir. 1988). 42 U.S.C. § 1981a(b)(1) permits imposition of punitive damages if a defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The "punitive damages standard set forth in § 1981a . . . is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim." *Lowery*, 206 F.3d at 441.

Defendants point to the absence of evidence of their conduct which qualifies as malicious or in reckless disregard of Officer Plymale's rights. Again, defendants are correct. Punitive damages are unavailable in the absence of a viable section 1981 claim.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS defendants summary judgment;
2. DIRECTS the clerk to enter judgment in favor of defendants Jerry Dyer and Mark Salazar and against plaintiff Sean Plymale and to close this action; and
3. VACATES the December 15, 2011 pretrial conference and January 24, 2012 trial.

IT IS SO ORDERED.

Dated:   November 15, 2011           /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE